# DATA MINERS, LP

## NEW LIMITED PARTNER JOINDER AGREEMENT

**THIS NEW LIMITED PARTNER JOINDER AGREEMENT** ("Agreement") is made and entered into effective for all purposes and in all respects on the date of execution indicated below by Data Miners, Limited Partnership, a Texas limited partnership ("LP") and A[redacted] F[redacted] New Limited Partner ("NLP") (collectively, the "parties").

**WHEREAS**, LP was formed subject to that certain Amended and Restated Limited Partnership Agreement July 12, 2021 among RFA Group, Inc., a Texas for-profit corporation, as general partner, and the limited partner(s) named therein (the "Partnership Agreement") (capitalized terms used and not otherwise defined herein have the meanings given them in the Partnership Agreement);

**WHEREAS,** LP desires to gift a Limited Partnership Interest in LP to NLP; and

**WHEREAS,** NLP desires to accept a gift of Limited Partnership Interest and become a Limited Partner of LP subject to the terms and conditions contained herein.

**NOW, THEREFORE,** in consideration of the mutual promises, covenants, and conditions contained herein, the parties agree as follows:

## ARTICLE 1

## PURPOSE

The purpose of this Agreement is to establish the terms and conditions upon which LP gives and NLP receives a Limited Partnership Interest in LP, and to confirm that NLP adopts and agrees to all of the terms on the Partnership Agreement which is attached hereto as Exhibit A.

## ARTICLE 2

## ACKNOWLEDGEMENT OF GIFT

The parties hereby acknowledge that the issuance of the Limited Partnership Interest hereunder by LP to NLP is a gift, and that no money or economic benefit of any kind has or will be provided to LP in exchange for said gift. This gift is conditioned upon and subject to the terms of this Agreement.

## ARTICLE 3

## LIMITED PARTNERSHIP INTEREST

Subject to the terms and conditions of this Agreement and the Partnership Agreement, herein incorporated by reference and included as Exhibit A to this Agreement, LP hereby gives to NLP a Limited Partnership Interest which is represented as a portion of a unit of LP as described in Article XV of the Partnership Agreement. This Limited Partnership Interest entitles NLP to participate as a Limited Partner in LP, with voting rights equal to NLP's Limited Partnership Interest in LP.

## ARTICLE 4

## ADHERENCE TO PARTNERSHIP AGREEMENT

In accepting this Limited Partnership Interest, NLP hereby agrees (i) that NLP is a party to and bound by the Partnership Agreement, (ii) to take notice of, accept, and abide by the terms of the Partnership Agreement and (iii) to execute and deliver such additional agreements, instruments, certificates and documents as may be necessary, appropriate or convenient to reflect the foregoing matters and the election of LP. NLP hereby acknowledges that they have had an opportunity to review all terms of the Partnership Agreement and to receive advice from their independent legal counsel. NLP accepts this gift of a Limited Partnership Interest freely and without reservation and fully supports the mission of LP, its interest in adding new partners which may dilute NLP's own newly acquired interest/voting rights in LP, and all provisions of the Partnership Agreement.

## ARTICLE 5

## NO INVESTMENT

NLP affirms that NLP has not made an investment of money, capital, or other economic benefit of any kind to LP prior to or as consideration for acquiring the Limited Partnership Interest in LP. NLP has not invested any money, capital, or other economic benefit of any kind to LP.

## ARTICLE 6

Agreement, NLP acknowledges that interest in LP is a security interest and that all interests in LP are not subject to federal or state securities laws.

THE LIMITED PARTNERSHIP INTEREST REPRESENTED BY THIS AGREEMENT HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER THE LAWS OF ANY STATE. SUCH INTEREST MAY NOT BE OFFERED FOR SALE, SOLD, DELIVERED AFTER SALE, TRANSFERRED, PLEDGED, OR HYPOTHECATED TO ANY PERSON IN THE ABSENCE OF AN OPINION OF COUNSEL SATISFACTORY TO THE GENERAL PARTNER THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED.

## ARTICLE 7

## EFFECTS

In accordance with the Partnership Agreement, LP shall amend the roster of Limited Partners to include NLP. To the extent the general partner of LP determines that it is in the best interest of LP to certificate its Partnership Interests, LP may provide NLP with a certificate reflecting NLP's Limited Partnership Interest in LP.

## ARTICLE 8

## MISCELLANEOUS PROVISIONS

**8.1: Severability.**

Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be unenforceable for any reason, the validity of the remaining provisions of this Agreement shall not be affected thereby and the unenforceable provision shall be deemed not to be a part of this Agreement.

**8.2: Entire Agreement; Waiver; Modification.**

This Agreement and the Partnership Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof. No provision of this Agreement may be modified or waived except in writing signed by both parties.

**8.3: Anti-Waiver.**

The failure of any party to enforce any of its rights arising by reason of any breach of covenant or failure of condition on the part of the other party will not constitute a waiver of such breach. No custom or practice arising between the parties in the course of administering the Agreement will be construed to waive any party's right to: (i) insist upon the performance of the other party of any covenant or condition in the Agreement, or (ii) exercise any rights provided to it on the account of any breach of such covenant or failure of such condition.

**8.4: Captions.**

Captions in this Agreement are inserted for convenience only and do not define, describe or limit the scope or the intent of this Agreement or form a part thereof.

**8.5: Interpretation.**

The parties acknowledge this that each of them and their respective counsel have reviewed and approved this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the party responsible for drafting the agreement shall not be applied in the interpretation of this Agreement. In entering into this Agreement each of the parties represents that it has relied upon the advice of counsel of its own choosing and that it has read in full and understood the terms of this Agreement and voluntarily accept the same.

**8.6: Counterparts.**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, and all of which together will constitute one document. The exchange of a fully executed Agreement (in counterparts or otherwise) by electronic transmission in .PDF format or by facsimile shall be sufficient to bind the parties to the terms and conditions of this Agreement. A facsimile or scanned (e.g., .PDF, .GIF, etc.) signature shall be deemed to be an original.

**8.7: Arbitration.**

Except as otherwise required by law, all disputes arising under or related to this Agreement (including, but not limited to, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel, or laches) shall be resolved by binding arbitration in Tarrant County, Texas before JAMS, or its successor, pursuant to the United States Arbitration Act, 9 U.S.C. § 1, by filing a written demand for arbitration with JAMS, with a copy to the other parties. The arbitration will be conducted in accordance with the provisions of JAMS' Comprehensive Arbitration Rules and Procedures (the "JAMS Rules") in effect at the time of filing of the demand for arbitration; provided, that the parties agree that (i) the arbitration shall be conducted by a single arbitrator selected in accordance with the JAMS Rules, and (ii) each party shall bear its or his own costs and expenses in any such arbitration and one-half of the arbitrator's fees and expenses. By agreeing to arbitration, the parties hereto do not intend to deprive any court of its jurisdiction to issue a pre-arbitral injunction, pre-arbitral attachment or other order in aid of arbitration.

**8.8: Governing Law; Venue.**

This Agreement is governed by and is to be construed in accordance with the laws of the State of Texas, irrespective of its choice-of-law rules. Although it is the intention of the parties that the arbitration provisions in Section 8.7 of this Agreement be fully enforced, to the extent any judicial action is required in aid of Section 8.7 of this Agreement or otherwise, the parties agree that any such action shall be filed exclusively in the state or federal courts with jurisdiction over Tarrant County, Texas, and each of the parties hereby consents to the

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date written below.

**Data Miners, LP**

Its: Manager
RFA Group, Inc.

BY:
Roy Franklin Anding, Jr.
Date: 10/30/2021

NLP: [redacted]

| **Signature:** | **Date:** | |
|---|---|---|
| [redacted] | 10/30/2021 | **IP Address:** 2601:58a:8000:2d90:86f:33ee:559f:f2fb<br>**Enrollment Date:** 2021-10-30 16:55:38 |

THE LIMITED PARTNERSHIP INTEREST REPRESENTED BY THIS AMENDED AGREEMENT HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER ANY STATE SECURITIES LAW. SUCH INTEREST MAY NOT BE OFFERED FOR SALE, SOLD, DELIVERED AFTER SALE, TRANSFERRED, PLEDGED, OR HYPOTHECATED TO ANY PERSON IN THE ABSENCE OF AN OPINION OF COUNSEL SATISFACTORY TO THE GENERAL PARTNER THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED.

THE CONTENTS OF THIS AMENDED AGREEMENT ARE CONFIDENTIAL. NEITHER PARTY WILL DISCLOSE, PERMIT THE DISCLOSURE OF, RELEASE, DISSEMINATE OR TRANSFER, ANY INFORMATION OBTAINED HEREUNDER OR OTHERWISE RELATED TO THE AGREEMENT TO ANY OTHER PERSON OR ENTITY EXCEPT A PARTY'S IMMEDIATE STAFF, EMPLOYEES, CONSULTANTS, ACCOUNTANTS, ATTORNEYS OR OTHER PROFESSIONAL RETAINED FOR THE PARTY'S DUE DILIGENCE REVIEW OF THE AGREEMENT AND EXCEPT, WITH PRIOR NOTICE TO COMPANY, PURSUANT TO LEGAL COMPULSION.

# AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT OF DATA MINERS, LP

THIS AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT of Data Miners, LP (the "Partnership") is made and entered into effective for all purposes and in all respects as of July 12, 2021 by RFA Group, Inc., a Texas for-profit corporation, as General Partner ("GP") and the limited partner who is a signatory hereto, as well as other limited partners which may be added from time to time pursuant to the provisions of the Partnership Law and Agreement.

## RECITALS

The Partnership is governed by that certain Limited Partnership Agreement dated as of June 28, 2021 (the "Original Agreement") by and between then General Partner Westchase Business, LLC and the limited partner(s), as amended by this Amended and Restated Limited Partnership Agreement dated July 12, 2021 (the "Amended

Agreement"). The Original Agreement has not been altered or amended except as expressly disclosed herein or in writing, and has been in full force and effect until the effective date of this Amended Agreement and is superseded and replaced in its entirety hereby. There are no oral modifications, amendment or waivers by or among any of the Partners pertaining to the subject matter of the Original Agreement.

The parties hereto desire to amend and restate the Original Agreement in its entirety, all as hereinafter provided.

Now, THEREFORE, in consideration of the foregoing, of the mutual promises of the parties hereto, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending legally to be bound, hereby agree to the following terms and conditions.

## ARTICLE I.

## DEFINITIONS

**Section 1.01: Terms.**

When used in this Amended Agreement, the following terms shall have the following meanings unless the context requires otherwise.

a. "Original Agreement" means the Limited Partnership Agreement dated June 28, 2021.

b. "Amended Agreement" means this Amended and Restated Limited Partnership Agreement.

c. "Certificate" means the Certificate of Limited Partnership described in Section 2.1, as amended from time to time.

d. "Code" means the Internal Revenue Code of 1986, as amended, or corresponding provisions of subsequent U.S. revenue laws.

e. "General Partner" means GP, and any other person from time to time admitted to the Partnership as an additional or substituted General Partner in accordance with this Amended Agreement, and such persons' permitted successors and assigns.

f. "Joinder Agreement" means an agreement in form and substance satisfactory to the General Partner, entered into between the Partnership and each new Limited Partner and providing for the joining of the Partnership and the possible return or revocation, as the case may be, of Limited Partnership Interests.

g. "Limited Partners" means the limited partner made signatory hereto, as well as other limited partners which may be added from time to time pursuant to this Amended Agreement.

h. "Partners" means the General Partner(s) and all Limited Partners.

i. "Partnership" has the meaning specified in Section 2.2.

j. "Partnership Interest" means each Partner's right to participate in the Partnership, either as a Limited Partner (a "Limited Partnership Interest") or as a General Partner (a "General Partnership Interest"), as the case may be.

k. "Partnership Law" means the Texas Business Organizations Code, as amended.

l. "Successor General Partner" has the meaning specified in Section 10.01(b).

m. "Tax Matters Partner" means the Partner so designated pursuant to Section 9.02.

n. "Working Owner" means the General Partner or any Limited Partner that provides a certain number of hours each year working to assist and promote the business purposes of the Partnership.

**Section 1.02: Usage.**

All references to Article or Section numbers, unless otherwise indicated, refer to articles or sections of this Amended Agreement. Headings are used for convenience only and do not form a part of this Amended Agreement. All pronouns shall be deemed to refer to the masculine, feminine or neuter, and to the singular or plural, as the identity of the person, persons, entity or entities to whom or which they refer may require.

## ARTICLE II.

## FORMATION OF LIMITED PARTNERSHIP

**Section 2.01: Formation.**

The Partners hereby form a limited partnership pursuant to the provisions of the Partnership Law. The rights and liabilities of the Partners shall be as provided under the Partnership Law, except as otherwise expressly provided in this Amended Agreement. The General Partner shall execute and, as it deems appropriate, cause to be filed, recorded and published a Certificate of Limited Partnership (the "Certificate") and any additional documents as may be necessary or appropriate to form a limited partnership pursuant to the Partnership Law.

**Section 2.02: Name.**

The limited partnership formed hereby shall operate under the name of Data Miners, LP ("Partnership").

**Section 2.03: Initial Registered Agent, Registered Address, and Principal Place of Business**

The initial registered agent shall be Landon Jordan. The initial registered address and the principal place of business shall be 1900 Matlock Rd., Suite 500, Mansfield, TX 76063. The business of the Partnership may also be conducted at such other or additional place or places as may be designated by the General Partner.

**Section 2.04: Term.**

The Partnership shall begin business on the date on which the Certificate of Limited Partnership is filed with Secretary of State of the State of Texas and shall continue in perpetuity until terminated as provided herein.

## Article Ill.

## PURPOSES OF THE PARTNERSHIP

**Section 3.01**

The purposes of the Partnership shall be any legal purposes and shall include, but not be limited to, (i) promoting an understanding and awareness of data usage and security issues; (ii) assisting the Partners to secure their personal data and information; (iii) assisting the Partners in gathering and collection of data in general; (iv) the capture, segregation aggregation, and sale to third-party marketing firms of electronic data generated by Partners and others; (v) assisting the Partners with marketing and monetizing the data and information collected by Partners and others to third parties in a secure manner while removing any individual identifying information; (vi) providing the Partners the opportunity to participate in Partnership-sponsored health insurance programs, the cost of which may be reduced by income generated from revenues from marketing Partners' data and information; (vii) encouraging scholarship and research in this field; (viii) promoting publications in this field; and (ix) fostering communications among teachers and scholars to enhance the public's understanding of data usage and security.

**Section 3.02**

In order promote the purposes of the partnership, each Limited Partner agrees and understands that he/she will function as a Working Owner by providing a minimum of 500 hours of work per year promoting the purposes of the Partnership.

**Section 3.03**

The Partnership shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in this Amended Agreement.

**Section 3.04**

In carrying out the Partnership's purposes, the Partnership shall be empowered to (i) exercise all powers necessary to or reasonably connected with the Partnership's business that may be legally exercised by limited partnerships under the laws of the State of Texas and (ii) engage in all activities necessary, customary, convenient, or incidental to any of the foregoing. The Partnership may engage or work with other entities from time to time as co-owners to promote and pursue the Partnership's purpose.

## Article IV.

## ACCOUNTING FOR THE PARTNERSHIP

**Section 4.01: Annual Statements.**

The General Partner shall cause annual financial statements of the operations of the Partnership to be prepared and made available upon reasonable request to each Limited Partner. Such financial statements need not be audited, unless the General Partner determines that audited

financial statements are necessary, or unless audited financial statements are required by creditors of the Partnership.

**Section 4.02: Access to Accounting Records.**

Any Limited Partner shall have reasonable access to the accounting records of the Partnership during regular business hours of the Partnership.

**Section 4.03: Income Tax Information.**

The General Partner shall make available to each Limited Partner information on the Partnership's taxable status and, presuming its nonprofit status is maintained, any unrelated business taxable income or loss and each item of income, gain, loss, deduction, or credit that is relevant to reporting Partnership income and how each Limited Partner is impacted by such income. This information shall be furnished to each Limited Partner within one hundred eighty (180) days after the close of the Partnership's taxable year, and, upon request to the General Partner, a copy of the Partnership's federal return of income for such year shall also be furnished.

**Section 4.04: Bank Accounts.**

The funds of the Partnership shall be deposited in such separate federally insured bank account or accounts as may be required, and the General Partner shall arrange for the appropriate conduct of such account or accounts.

**Section 4.05: Books of Account.**

There shall be kept at the principal office of the Partnership true and correct books of account in which shall be entered fully and accurately each and every transaction of the Partnership. The books shall be kept on the cash receipts and disbursements method for the Partnership's accounting year.

**Section 4.06Accounting Year.**

The Partnership accounting year shall be the accounting year of the Partnership for both book and (as applicable) tax purposes, beginning January 1st and ending December 31st of each year.

**Article V.**

**NO PURCHASE OF PARTNERSHIP INTEREST AND NO CAPITAL CONTRIBUTIONS**

**Section 5.01: No Purchase of Interest; No Capital Contributions; Potential Future Revenue Potential.**

No Partner has made any capital contribution, and no such contributions are required of any Partner. Each Limited Partner was given a Limited Partner's interest in the Partnership by Partnership for no consideration or obligation of any kind. In addition, no person will be permitted to make a capital contribution in exchange for a Partnership Interest. An interest in this Partnership is only available by gift to prospective limited partners.

The Limited Partners shall not be required to make any capital contributions upon joining or during their tenure with the Partnership. The General Partner shall not have any personal liability for the repayment of any capital contribution of any Limited Partner, though no such capital contribution is permitted or feasible.

Notwithstanding the foregoing, it is intended that the Limited Partners will be given the opportunity to participate in one or more programs sponsored by the Limited Partnership to market their personal data and information (on an anonymous basis), for which the Partnership will receive compensation. Therefore, is possible that the Limited Partnership will receive income from such activities, which the Limited Partnership intends to utilize (i) to pay its operational expenses and

any outstanding debts and (ii) to reduce the costs to the Partners of any sponsored health insurance plans, and (iii) to further its purposes.

**Section 5.02: Loans.**

If the Partnership requires additional capital, the General Partner is authorized to cause the Partnership to borrow money upon such terms as the General Partner, in its sole discretion, shall determine and to mortgage, pledge, or hypothecate the assets of the Partnership in connection with suchborrowing. In that event, the General Partner may, but shall not be required to, lend funds to the Partnership.

## Article VI.

## PROFITS AND LOSSES

**Section 6.01: Determination.**

The net profits or net losses of the Partnership shall be determined in accordance with the method of accounting adopted by the Partnership.

**Section 6.02: Allocation of Profits and Losses.**

The net profits of the Partnership shall be allocated eighty percent (80%) to the Limited Partners (in accordance with the formula set forth in Section 15.01) and twenty percent (20%) to the General Partner. Upon any dissolution or winding up of the Partnership, after payment of all debts and obligations, the net assets of the Partnership shall be allocated on the same basis as netprofits of the Partnership are allocated as provided in this Section 6.02.

## Article VII.

## PARTNERSHIP RECORDS

**Section 7.01**

The General Partner shall cause the Partnership to maintain at its offices (i) a current list of the full name and last known business address of each Partner, (ii) a copy of the Certificate, (iii) copies of tax filings and financial statements for the previous four years, and (iv) copies of any then effective limited partnership agreements related to the Partnership.

## Article VIII.

## PARTICIPATION IN ALLIANCES AND CONTRIBUTION OF PARTNER INFORMATION

**Section 8.01: Participation in Strategic Alliances.**

In connection with the purposes and activities described in Article III, and subject to the discretion of the General Partner, the Partnership may enter into one or more agreements, associations or other arrangements with other organizations involved in the collection, maintenance, marketing, and use of data to help establish guidelines for certain business operations, share costs, and negotiate equitable revenue from said business operations. The General Partner is authorized to negotiate, execute and deliver a charter and such other documents and instruments as it may deem (in its sole discretion) reasonable or appropriate to enter into and/or consummate such associations.

**Section 8.02: Contribution of Partner Data.**

All Limited Partners acknowledge that, for so long as he or she remains a Limited Partner, each Limited Partner has the duty to contribute, and Partnership may collect, certain personal information and data generated from use of the internet, mobile apps, "Smart" TVs, and other electronic devices, including without limitation information by which the Limited Partner may be personally identified, such as postal address, e-mail address, telephone number, partnership benefits elections, internet usage information, mobile device app usage information,

geo-location information or any other identifier by which such Limited Partner may be contacted ("Partner Data").

**Section 8.03: Ownership and Use of Partner Data.**

All such Partner Data, in its aggregated form, shall be the property of the Partnership and may be used at the sole discretion of the General Partner in connection with or in support of the Partnership's business and administrative purposes. Partner Data may also be used by the Partnership to contact Limited Partners about goods and services that may be of interest to Limited Partners, provided that the Partnership provides a means by which Limited Partners may opt out of such use. The Partnership may disclose aggregated Partner Information, and information that does not identify any individual, without restriction. The Partnership may disclose Partner Information that it collects from Limited Partners (or that a Limited Partner otherwise provides to the Partnership) to the Partnership's subsidiaries and affiliates, to contractors, service providers, and other third parties the Partnership uses to support its business, and to third parties to market their products or services to Limited Partners who have not opted out of such disclosures. The Partnership may also disclose Partner Information to comply with any court order, law, or legal process, including to respond to any governmentor regulatory request, and to enforce its rights under any applicable agreement or applicable law, including for billing and collection purposes.

**Section 8.04: Data Security.**

The Partnership shall use commercially reasonable legal, organizational, physical, administrative and technical measures and security procedures to safeguard and ensure the security of the Partner Data and to protect the Partner Data from unauthorized access, disclosure, duplication, use, modification or loss. The Partnership shall attempt to obtain data

protection insurance or similar insurance to the extent such insurance is available and the premiums are commercially reasonable.

**Section 8.05: Objection to Use by Limited Partner.**

All of the foregoing and other uses of Partner Data are at the discretion of the General Partner. In the event a Limited Partner objects to any use of such Limited Partner's Partner Data, such Limited Partner may notify Partnership of its objection and either opt out of such use or, if the General Partner deems such use to be essential to the purposes of the Partnership, Limited Partner may exercise its right to return its Limited Partnership Interest to the Partnership. Upon return of its Limited Partner Interest, the General Partner will provide a withdrawing Limited Partner with information and instruction necessary to terminate and/or remove any software provided by the Partnership which captures and transmits Partner Data. All Partner Data provided to the Partnership prior to the withdrawal of a Limited Partner as well as all Partner Data transmitted to the Partnership after withdrawal and before termination and/or removal of any data capturing software shall remain the property of the Partnership to be used in accordance with the terms and conditions of this Amended Agreement.

## Article IX.

## ADMINISTRATIVE PROVISIONS

**Section 9.01: Management by the General Partner.**

All of the business of the Partnership, including, but not limited to, decisions on all tax elections and the voting of any shares of stock owned by the Partnership, shall be under the exclusive management of the General Partner. The Limited Partner(s) shall not participate in the management or operation of the business of the Partnership.

**Section 9.02: Tax Matters Partner.**

The General Partner shall serve as the "Tax Matters Partner" for the Partnership. The Tax Matters Partner shall perform, and hereby agrees to perform, certain duties and obligations imposed upon a "Tax Matters Partner", as defined in § 6231(a)(7) of the Code, in connection with the audit or review of a Partnership federal return of income, as such duties and obligations are set forth in § 6221 of the Code and following sections. For all years for which the Bipartisan Budget Act of 2015 applies, theTax Matters Partner shall also be the "Partnership Representative" of the Company under section 6223(a) of the Code (as enacted by the Bipartisan Budget Act of 2015). The Tax Matters Partner shall be reimbursed by the Partnership for expenses incurred in the performance of such duties, including legal and accounting fees incurred in connection with such duties as Tax Matters Partner.

The General Partner shall have the right at any time to resign as Tax Matters Partner, by giving notice ofsuch resignation in writing to all Partners. In the event it resigns, ceases to be a General Partner of the Partnership, or is unable or unwilling to serve as Tax Matters Partner for any reason, a new Tax Matters Partner will be appointed by a unanimous vote of the Partners.

**Section 9.03: Time Devoted by the General Partner.**

The parties understand that the General Partner has other business activities which over the year take a major part of the respective total time devoted to business matters. Accordingly, the General Partner is required to devote to the business of the Partnership only the time and attention as they, in their sole discretion, shall determine is required to conduct the business of the Partnership.

**Section 9.04: Limitation on Liability of General Partners, Indemnification.**

To the fullest extent permitted by the Partnership Law, the General Partner shall have no liability,responsibility, or accountability, in damages or otherwise, to any other Partner or the Partnership, and the Partnership agrees to indemnify, pay, protect, and hold harmless the General Partner (on the demand of and to the satisfaction of such General Partner) from and against, any and all liabilities, obligations, losses, damage, penalties, actions, judgments, suits, proceedings, costs, expenses, and disbursements, of any kind or nature whatsoever (including, without limitation, all costs and expenses of defense, appeal, and settlement of any and all suits, actions, or proceedings, instituted against any such General Partner or the Partnership and all costs of investigation in connection therewith) ("Losses ") which may be imposed on, incurred by, or asserted against any such General Partner or the Partnership in any way relating to or arising out of, or alleged to relate to or arise out of, any action or inaction on the part of the Partnership or on the part of any such General Partner as General Partner of the Partnership; provided that the General Partner shall be liable, responsible, and accountable, and the Partnership shall not be liable to the General Partner, for any portion of such Losses resulting from the General Partner's gross negligence or a willful breach of General Pa1iner's fiduciary duty to the Partnership or any Partner.

If any action, suit, or proceeding shall be pending or threatened against the Partnership or the General Partner relatingto or arising out of, or alleged to relate to or arise out of, any such action or non-action, the General Partner shall have the right to employ, at the expense of the Partnership, separate counsel of theGeneral Partner's choice in such action, suit or proceeding. The satisfaction of the obligations ofthe Partnership under this Section shall be from and limited to the assets of the Partnership and no Partner shall have any personal liability on account thereof. The General Partner shall have the right to bill the Partnership for, or otherwise

request the Partnership to pay, at any time and from time to time after the General Partner has become obligated to make payment therefor, any and all amounts for which the General Partner believes, in good faith, that such General Partner is entitled to indemnification under this Section. The Partnership shall promptly pay any and all such bills and honor any and all such requests for payment when such bill or request is received by such General Partner. In the event that a final determination is made that the Partnership is not so obligated inrespect of any amount paid by it to the General Partner, such General Partner shall promptly refund such amount to the Partnership.

The Partnership shall indemnify, to the extent of Partnership assets, the Limited Partners against any claims of liability asserted against the Limited Partners solely because they are Limited Partners of the Partnership.

**Section 9.05: Fees of General Partner.**

The Partnership shall pay reasonable fees to the General Partner for services rendered to the Partnership, as determined by the General Partner; provided, that such feesshall not exceed the fair market value of the applicable services, and any agreements providing for such fees shall be negotiated at arm's length.

**Section 9.06: Limited Liability of Limited Partners.**

A Limited Partner shall not be liable for the debts, liabilities, contracts, or any other obligations of the Partnership. Except as otherwise provided in this Amended Agreement, a Limited Partner shall not take part in, or interfere in any manner with, the conduct or control of the business of the Partnership and shall have no right or authority to act for or bind the Partnership.

**Section 9.07: Additional Authority of General Partner.**

The General Partner and Limited Partner(s), by signing and executing this Amended Agreement, hereby authorize GP as General Partner, to take, permit, and/or omit any action or actions, and to do or have done any action or actions, which are, or may be, consistent with or authorized by the provisions of this Amended Agreement, and irrevocably make, constitute and appoint GP as General Partner, as true and lawful agent and attorney-in-fact with full power of substitution and with power and authority in each Limited Partner's name, place, and stead to make, sign, execute, acknowledge, swear to, deliver, perform, implement, file, and record any and all agreements, limited partnership agreements, deeds of trust, promissory notes, financing and continuation statements, certificates, options, leases and other conveyances and other documents or instruments, including, but not limited to, the amended certificate and every amended or restated certificate which GP as General Partner, considers to be required, necessary, desirable, or convenient (i) for, to, or in connection with the acquisition and ownership by the Partnership of interests in property, and (ii) for, to, or in the management of conduct of the business of the Partnership.

The power of attorney granted by each Limited Partner is a special power of attorney which (1) is irrevocable, (2) is coupled with an interest, (3) shall survive the death of the Limited Partner, (4) shall not be affected by the subsequent disability or incompetence of the Limited Partner, (5) shall survive the dissolution or termination of a Limited Partner which is a corporation, general or limited partnership, joint venture , trust, estate, or other entity or association, and (6) shall survive the sale, exchange, or other transfer by a Limited Partner of all or any portion of the Limited Partner's interest, where the assignee has been approved by GP as General Partner, for admission to the Partnership as a limited partner, and shall survive such admission and constitute a similar power of attorney from such assignee as a Limited Partner.

If there is more than one Limited Partner, the power of attorney may be exercised GP, as General Partner, for all the Limited Partners by a single signature and acknowledgement or verification of GP as General Partner, acting as attorney-in-fact for all the Limited Partners together, or by listing all of the Limited Partners and executing any instrument with a single signature and acknowledgement or verification of GP as General Partner, acting as attorney-in-fact for all of the Limited Partners together.

Each Limited Partner expressly agrees to be bound by the representations made by GP as General Partner, acting pursuant to this Section 9.07 and hereby waives any and all defenses which shall be available to such Limited Partner to contest, negate, or disaffirm the actions of GP as General Partner pursuant to this Section 9.07.

Notwithstanding anything contained herein above or below to the contrary, any General Partner may act alone for and on behalf of the Partnership without the necessity of signatures, including but not limited tothe exercise of the power of attorney granted to General Partner under Section 9.07 of this Amended Agreement.

**Section 9.08: Voting Procedures.**

On all matters requiring a vote of the Partners under this Amended Agreement,the General Partner shall provide written notice to all Partners of (i) the material substance of such vote, (ii) the General Partner's voting recommendation and reasons for such recommendation; (iii) the date by which votes must be received by the Partnership in order to be counted; and (iv) instructions on how each Partner shall cast their votes. Such notice may be delivered by email or other electronic means to all Limited Partners. Votes may be cast by Partners by email or other electronic means as specified in the notice. Where a vote is required of the Partners under this Amended Agreement and does not require a unanimous vote, asimple majority of all

Partnership Units casting votes on or before the voting deadline set forth in the notice provided by the General Partner shall be sufficient to approve the matter in issue. Where a unanimous vote is required of the Partners under this Amended Agreement, the unanimous consent of all Partnership Units casting votes on or before the voting deadline set forth in the notice provided by the General Partner shall be sufficient to approve the matter in issue. Any Partner who fails to cast a vote on or before the voting deadline set forth in the notice shall be deemed to have abstained from the vote and such Partner's Partnership Units shall not be included in the determination of a simple majority or unanimous vote.

## Article X.

## DEATH OR WITHDRAWAL OF A PARTNER

**Section 10.01: Withdrawal of a General Partner.**

The Partnership shall not dissolve upon the following events: (a) incapacity of a General Partner, (b) filing, in any court pursuant to any federal or state statute, of a petition in bankruptcy or insolvency by, for a reorganization by, or for the appointment of a receiver of all or a portion of the petitioner's property by a General Partner, and/or (c) making an assignment for the benefit of creditors by a General Partner.

At the time any successor General Partner is appointed by the General Partner or by operation oflaw (a "Successor General Partner") and begins to serve in the capacity of a General Partner, a portion of his or her Limited Partnership Interest equal to a one percent (1%) interest in and to the income, gain, loss, deduction, or credit of the Partnership shall be converted to a General Partnership Interest. He or she shall continue as a Limited Partner as to the remainder of his or her Limited Partnership Interest. In the event of a transfer of an interest as a General Partner, pursuant to Article XI of this Amended Agreement, such interest as a

General Partner shall be converted to a Limited Partnership Interest at the time of such transfer and shall remain subject to all of the provisions of Article XI of this Amended Agreement.

Upon the death, incapacity, resignation, or bankruptcy of a General Partner, any General Partnership Interest he or she may own at that time shall be converted to a Limited Partnership Interest. The deceased, incapacitated, resigning, or bankrupt General Partner, or the successor in interest of such General Partner, shall become a Limited Partner with the same share of profits or losses of the Partnership as before the event and shall have all the rights and be subject to the same limitations of a Limited Partner.

For purposes of this Amended Agreement, the determination of whether a General Partner is incapacitated shall be made by two (2) medical doctors, one selected by the other Partners and the other selected by the spouse, or if no spouse, by the oldest child of the General Partner whose capacity is questioned. If the two doctors cannot agree, then such doctors shall select a third doctor, and the question of capacity shall be determined by a majority vote of the three (3) doctors.

Upon the happening of one or more of the events described in this Section 10.01, the business of the Partnership shall be continued by the General Partner as provided in this Section 10.01. However, upon the death, incapacity, resignation, withdrawal, or adjudication of bankruptcy of the General Partner, and if no Successor General Partner is selected, or upon the unanimous mutual consent of the Partners, the Partnership shall be dissolved.

**Section 10.02: Death, Bankruptcy, or Incapacity of a Limited Partner.**

The death, bankruptcy, or incapacity of a Limited Partner shall not dissolve the Partnership.

**Section 10.03: Resignation of a General Partner.**

Any General Partner may resign upon thirty (30) days' notices to all of the Partners, and a Successor General Partner shall be determined as provided in Section 10.01. In any event the resigning General Partner's interest shall be converted to a Limited Partnership Interest as provided in paragraph (c) of Section 10.01. The resigning General Partner shall continue to be liable, as a General Partner, to the creditors of the Partnership for the liabilities and obligations of the Partnership which accrue, or result from transactions or activities entered into prior to the filing of record of the Amended Certificate of limited Partnership.

**Section 10.04: Amended Certificate of Limited Partnership.**

Upon transfer or conversion of any General Partnership Interest, the Partnership shall file for record an amended Certificate and each Partner hereby agrees to execute such instrument, if requested.

**Section 10.05: Revocation of Limited Partnership Interest.**

Pursuant to a Limited Partner's Joinder Agreement, a Limited Partner's Partnership Interest may be revoked by the Partnership as noted in such Agreements as determined solely by the General Partner. Such action will immediately terminate any Partnership Interest in the Partnership held by such Limited Partner.

## Article XI.

## TRANSFER OF A PARTNERSHIP INTEREST

**Section 11.01: Prohibited Transfer of a Partnership Interest.**

Except as provided in this Article XI, no Partner may transfer or dispose of any Partnership Interest by sale, assignment, gift, or otherwise without the unanimous written

consent of the General Partner. Any sale, assignment, gift or transfer, or purported sale, assignment, gift, or transfer, of any Partnership Interest, except as specifically provided for and allowed in this Article XI, shall be null and void. This Article does not apply to revocations pursuant to Section 10.05.

**Section 11.02: Transfer of a Partnership Interest by Sale.**

Transfers of a Partnership Interest by sale are not permitted except with the prior written consent of the General Partner.

**Section 11.03: Transfer of a Partnership Interest by Gift at the Death of a Partner.**

Any gift of a Partnership Interest or any transfer of Partnership Interest after the death of a Partner may be made only on the following conditions:

a. The estate of the deceased Partner or the Partner making a gift of a Partnership Interest (the "Donor") must grant a one (1) year period during which the General Partner may approve or deny the transfer of Partnership Interest; or

b. Any gift or transfer, or purported gift or transfer, of any Partnership Interest after the death of a Partner, except as otherwise provided in this Article XI, shall be null and void unless made strictly in accordance with the provisions of this Article XI.

**Section 11.04: Substituted Limited Partner.**

No transferee of the whole or any portion of a Limited Partner's interest in the Partnership who is not already a Partner in the Partnership shall have the right to become a substituted Limited Partner in place of the assignor unless:

a. the assignor shall designate such intention in the instrument of assignment;

b. the written consent of the General Partner to such substitution shall be obtained;

c. the instrument of assignment shall be in a form and substance satisfactory to the General Partner;

d. the assignor and assignee named therein shall execute and acknowledge such other instrument or instruments as the General Partner may deem necessary or desirable to effectuate such admission;

e. the assignee shall accept, adopt, and approve in writing all of the terms and conditions of this Amended Agreement as the same may have been amended; and

f. such assignee shall pay or, at the election of the General Partner, obligate him or herself to pay all reasonable expenses connected with such admission, including but not limited to the cost of preparing, filing, and publishing any amendment of the Certificate to effectuate such admission.

**Section 11.05: Further Restrictions on Transfers**

In the case of the transfer of any Partnership Interest in any voluntary or involuntary manner whatsoever (other than as provided in Section 11.01, Section 11.02, and Section 11.03) under judicial order, legal process, execution, attachment, enforcement of a pledge, trust, or encumbrance or sale under any of them, the person to whom the Partnership Interest passes shall

offer to give such Partnership Interest in the same manner as provided in Section 11.03 and shall be treated as a "deceased Partner." This section does not apply to revocations as noted in Section 10.04.

No Partner shall make any transfer or assignment of all or any part of his or her interest in this Partnership if said transfer or assignment would, when considered with all other transfers during the same applicable twelve (12) month period, cause a termination of this Partnership for federalor state income tax purposes, create noncompliance of the Partnership with the Partnership Law.

THE LIMITED PARTNERSHIP INTEREST REPRESENTED BY THIS AMENDED AGREEMENT HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER ANY STATE SECURITIES LAW. SUCH INTEREST MAY NOT BE OFFERED FOR SALE, SOLD, DELIVERED AFTER SALE, TRANSFERRED, PLEDGED, OR HYPOTHECATED TO ANY PERSON IN THE ABSENCE OF AN OPINION OF COUNSEL SATISFACTORY TO THE GENERAL PARTNER THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED.

**Section 11.07: Security Interest**.

No Partnership Interest herein shall be subjected to a security interest by any Partner without the written consent of the General Partner.

**Section 11.08: Transfer of a General Partner's Interest.**

In the event that a General Partnership Interest is to be transferred pursuant to the provisions of this Article XI, then said General Partnership Interest shallbe converted into a

Limited Partnership Interest immediately prior to the closing of said transaction or the making of said transfer and the transferee or recipient shall receive only a Limited Partnership Interest. The Partnership shall file for record an amended Certificate as required by law, which shall specify the portion of the General Partnership Interest converted into a Limited Partnership Interest and the date the conversion occurred. Like other Partnership Interests, a General Partnership Interest may not be sold.

**Section 11.09: Transfer/Granting of Limited Partnership Interest by General Partner to New Limited Partners.**

Notwithstanding anything contained herein above or below to the contrary, General Partner shall not be restricted in the gifting of any Limited Partnership Interests to third parties desiring to join the Partnership so long as such new Partners agree to the terms and conditions of this Amended Agreement and a Joinder Agreement, and execute such other documents as deemed appropriate by the General Partner. The Partners anticipate a large volume of Limited Partners joining this Partnership and encourage General Partner to give Limited Partnership Interests to any prospective Limited Partner in the best judgment of General Partner subject to the terms of this section. Partners understand and agree that their interest's authority in Partnership may be diluted by the addition of new Partners, but that they welcome new Partners and desire for this Partnership to add as many Limited Partners as possible subject to the terms of this section.

## Article XII.

## DISSOLUTION AND TERMINATION OF THE PARTNERSHIP

**Section 12.01: Right to Dissolve the Partnership.**

No single Partner shall have the right to cause dissolution of the Partnership before the expiration of the term for which it is formed. However, one hundred percent (100%) of the Partnership Interests shall have the right to cause a dissolution before the expiration of the term for which **it** is formed. Notwithstanding anything to the contrary in this Section 12.01, the General Partner has the right to cause a dissolution of the Partnership if (i) the Partnership purposes are deemed illegal or (ii) the Partnership fails to become economically feasible or becomes economically infeasible to operate as intended.

**Section 12.02: Winding Up the Partnership.**

In the event of a dissolution, or the death, incapacity, withdrawal, or bankruptcy of the General Partner without determining a Successor General Partner, or the mutual consent of all of the Partners, the Partnership shall immediately commence to wind up its affairs. The proceeds from liquidation of Partnership assets shall be applied in the following order.

a. Payment to creditors of the Partnership, other than Partners, in the order of priority provided by law;

b. Payment to Partners for loans, if any, made by them to the Partnership;

c. The balance, if any, shall be distributed among all the Partners as provided in Section 6.02 herein above.

**Section 12.03: Waiver of Right to Decree of Dissolution**.

The parties hereby agree that irreparable damage would be done to the goodwill and reputation of the Partnership if any Partner should bring an action in court to dissolve the Partnership. Accordingly, each party hereby waives and renounces any rights to a court decree of dissolution or to seek the appointment by the court of a liquidator for the Partnership.

## Article XIII.

## TITLE TO PARTNERSHIP PROPERTY

**Section 13.01**

Legal title to Partnership property shall be held in the name of the Partnership. Subject to the provisions of Article IX, and the other provisions hereof, as well as their fiduciary obligations to the Limited Partners, the General Partner shall have the right, power and authority (without regard to the term of the Partnership), acting for and on behalf of the Partnership, to enter into and execute any lease, contract, agreement, deed, mortgage, or other instrument or document required or otherwise appropriate to lease, sell, mortgage, convey, or refinance Partnership property (or any part thereof), to borrow money and execute promissory notes, to secure the same by mortgage (which term "mortgage" is hereby defined for all purposes of this Amended Agreement to include deeds of trust, financing statements, chattel mortgages, pledges, conditional sales contracts, and similar security agreements) upon Partnership property, to renew or extend any and all such loans or notes, and to convey Partnership property in fee simple by deed, mortgage, or otherwise . In no event shall any party dealing with such General Partner with respect to any Partnership property, or to whom Partnership property (or any part thereof) shall be conveyed, contracted to be sold, leased, mortgaged, or refinanced (which term "refinanced" is hereby defined for all purposes of this Amended Agreement to include recast, modified, extended, or increased) by such General Partner, be obligated to see to the application of any purchase money, rent, or money borrowed or advanced thereon, or be obligated to see that the terms of this Amended Agreement have been complied with, or be obligated to inquire into the necessity or expediency of any act or action of such General Partner, and every contract, agreement, deed, mortgage, lease, promissory note, or other

instrument or document executed by such General Partner, with respect to any Partnership property, shall be conclusive evidence in favor of any and every person relying thereon or claiming thereunder that (a) at the time or times of the execution and/or delivery thereof, the Partnership was in full force and effect, (b) such instrument or document was duly executed and authorized and is binding upon the Partnership and all of the Partners thereof, and (c) such General Partner executing and delivering the same were duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the Partnership. It is expressly understood and agreed that the manner of holding title to Partnership property (or any part thereof) and any Partnership assets are solely for the convenience of the Partnership. Accordingly, the spouse, heirs, executors or administrators, beneficiaries, successors, or assigns, of any Partner shall have no right, title or interest in or to any Partnership property or Partnership assets regardless of the manner in which title is held; rather, Partnership property and any Partnership assets shall be subject to the terms of this Amended Agreement.

## Article XIV.

## AMENDMENTS

**Section 14.01**

The General Partner shall have the right to amend the Certificate of Limited Partnership or this Amended Agreement without the consent of any Partners for the following purposes: (i) to change the name or address of a Limited Partner; or (ii) to change the name of the registered office or registered agent of the Partnership; or (iii) in the opinion of the General Partner, there is an inconsistent, ambiguous, false or erroneous provision in this Amended Agreement provided the amendment does not adversely affect the rights of the Partners under this Amended

Agreement; (iv) in the opinion of counsel for the Partnership, it is necessary or appropriate to satisfy (v) a requirement of the Code with respect to partnerships, (vi) a requirement of Partnership Law, or (vii) of any federal or state securities laws or regulations, provided such amendments do not adversely affect the interests of the Partners. Any amendment to the Certificate of Limited Partnership or this Amended Agreement not otherwise expressly addressed in this Section 14.01 shall require the approval of the Partners pursuant to a vote conducted in accordance with Section 9.08.

## Article XV.

## OWNERSHIP UNITS

**Section 15.01**

Each Partnership Interest may be designated in units or fractional part thereof ("Partnership Units") with each unit representing a percentage interest in the voting rights of the Partnership. The General Partner is hereby granted twenty percent (20.00%) of all Partnership Units, which shall constitute one hundred percent (100%) of all General Partnership Interests. The Limited Partners, in the aggregate, are hereby granted eighty percent (80.00%) of all Partnership Units, which shall constitute one hundred percent (100%) of all Limited Partnership Interests. With respect to each Limited Partner, the Partnership Units shall equal a percentage equal that Limited Partner's pro rata share in relation to the total aggregate number of Limited Partners. But in no case, shall the total number of Limited Partner units exceed eighty percent (80.00%) of the total number of Partnership Units. With each Partnership Interest representing a Partner's entire interest in the Partnership, including such Partner's right to vote on, consent to, or otherwise participate in any decision or action of or by the Partnership granted pursuant to this Amended Agreement or, subject to applicable provisions of this Amended Agreement, the Partnership Act. Each

Partnership Interest shall carry with it the right to vote (as specifically limited herein) as provided in this Amended Agreement.

IN WITNESS WHEREOF, the undersigned Partners Data Miners, LP have sworn hereto and hereunto affixed their signatures as of the date and year first above written.

GENERAL PARTNER.

RFA Group, Inc.

BY: ____________________

Roy Franklin Anding, Jr.

By: Data Miners, LLC

Its: Manager

RFA Group, Inc.

BY: ____________________

Roy Franklin Anding, Jr.

LIMITED PARTNER:

____________________

Omar Kasani, Limited Partner